Good morning, Your Honors. May it please the Court, Deputy Attorney General Kevin Vogt for defendants Appellants Vangilder and Vasquez, and I plan to reserve two minutes for rebuttal. Your Honors, this Court should reverse the District Court's award of attorneys' fees under California's private attorney general statute, California Code of Civil Procedure 1021.5, for three main reasons. First, the District Court erred because Mr. Manriquez's $2,500 judgment did not confer a significant benefit on the public or a large class of persons. Under Section 1021.5, it's not enough to be a prevailing party or that the case concern an important constitutional or statutory right. The impact on the public is what matters, and this case resulted in no change of prison policy, no injunctive relief, and no declaration of prisoner rights. Second, the District Court erred because the financial burden of Mr. Manriquez's action did not transcend his personal interests. He didn't satisfy this statutory element because any public benefit was merely incidental to the attainment of his personal financial interests. And third, even if Mr. Manriquez were eligible for fees under California law, the District Court erred by under the Prison Litigation Reform Act. I'd like to focus on the first threshold issue, the significant public benefit, but I can answer any questions that the Court may have regarding the other two issues. Please keep going. Thank you. Regarding the significant public benefit element, under California law, the private attorney general fees are a very limited exception to the normal rule that parties bear their own attorneys' fees, regardless of whether they are the prevailing party. And as the California Supreme Court has explained, the legislature did not intend to allow fees in all cases merely because it resulted in the enforcement of an important constitutional or statutory right. The litigation must also confer a significant and widespread benefit on the public or a large class of persons, and that determination has to be made based on a realistic assessment of the actual gains in the case. And if the primary effect of the litigation is to advance a plaintiff's personal interests, then private attorney general fees are not available. Now here, the District Court failed to make a realistic assessment and gave the statute an overly broad reading by concluding that a significant benefit had been conferred on all prison inmates because the jury purportedly found that the prison's policies concerning exposure to pepper powder, oleo resin, capsicum, OC, that those policies were somehow insufficient. And there's two problems with the District Court's conclusion. Now first, the notion that the jury found that prison policies were insufficient is not supported by the record. And second, even if the jury made such a finding, that's not a cognizable significant benefit under the statute. Now, with respect to the first part, there was never any dispute that CDCR's policies require decontamination, ventilation, and medical attention for inmates who are exposed to OC. And Mr. Manriquez never alleged that there was a problem or that the policies, the prison policies, the adequacy of those policies was the issue that caused the violation in this case. In fact, Mr. Manriquez alleged in his complaint specifically that the defendants violated CDCR's regulations with respect to the incident that occurred concerning the discharge, the accidental discharge of the pepper powder grenade and the exposure to the OC. So the District Court referenced the fact that there were there was evidence in the record of large amounts of use of chemicals in the prison facilities and then went on to say that this was part of the policy issue that was in question during the trial. How do you respond to that? Well, Your Honor, the mere fact that pepper spray or OC is used throughout the prisons is not enough to demonstrate that what occurred in this case somehow conferred a significant benefit or that the jury's verdict reflected a determination that prison policies were going to, required to change with respect to what happened in this case. Yes, OC is used in prisons. However, what the jury found was not that CDCR's policies were somehow inadequate or that the violation occurred as a result of the inadequacy of the policies, but it was a dispute ultimately about what actually happened on that day, June 4th, the incident in question with respect to the degree of exposure. And Mr. Manriquez and the plaintiffs and the other inmates had all alleged that what happened was is that they were exposed to such a degree, they were suffering severe effects from exposure and calling out, yelling out throughout the housing unit, man down. And both plaintiff's own experts testified and the defendants themselves testified that in that situation, if inmates were calling out man down, calling for medical attention, they needed to be provided that medical attention. And that would have been a violation of CDCR policy if they did not, if they were ignored, if they had been calling out for attention and were ignored, that would have been a violation of CDCR policy. And the jury verdict. Judge Wallace has a question. You make a good argument and it's well outlined in your brief. The difficulty I have as a standard of review, we have to, you have to be able to demonstrate there was an abuse of discretion, not that the district court was wrong. And that's a very heavy burden. And many of these issues we just, for the good of what we do, we just know the district courts are in a better position than we are. And the burden changes in that situation. Now, even assuming everything is right, how would you say that this is an abuse of discretion? That is, this one sticks out so much that the district judge was abused the discretion that's given to the district court? Yes, Your Honor. Well, the reason is that this, it's a mixed question, but whether or not the conclusion actually comport with the substantive requirements under Section 1021.5, does it, this is a determination, it's a legal determination that this court has to look at the values that animate the statute, the justifications that the statute reflects. And California courts have interpreted the significant benefit element as being ultimately a legal determination. It doesn't, where the trial court, the district court is not entitled to deference in this with respect to that determination. The court may make factual findings. You mean we're wrong, that this is not an abuse of discretion standard case? Well, Your Honor, even under the abuse of discretion standard, a legal error is still an abuse of discretion. And when in a mixed question, these types of, where the court is making a finding, it's not entitled to deference if it's based on an erroneous view. What's your best case that if it's a legal issue is involved, abuse of discretion goes out the door? What's Los Angeles Police Protective League versus City of L.A.? That's a California Court of Appeals case, but it discusses the significant public benefit element and describes it as ultimately a legal question, not a factual one, because it determines, it depends on. You're continuing to go back to what you said before. It's a legal question, therefore there's no abuse of discretion. Well, I mean, I agree with you that generally under the abuse of discretion standard, if there's a legal error, that it is an abuse of discretion. I mean, that's given our standards of review. But whether you treat these determinations as factual findings or under abuse of discretion, I'm still not seeing the error because the district court specifically said, look, this situation really extends beyond the individuals on trial here and goes on to talk about the larger population and even more specifically the 1,900 inmates at Pelican Bay and the circumstances under which there wasn't care, they didn't follow procedures, the ventilation efforts were inadequate. Why isn't that sufficient, whether you call it abuse of discretion or legal, to uphold the district court's determination? Because, Your Honor, under California law, the justification or the reasoning that the court relied on, the only way that the verdicts, this purported jury finding that the policy was insufficient could be relevant to other inmates is if it sends a message to prison officials that somehow the conduct, that issue in this case was unlawful. Your Honor, I see my time has expired. Let me just say, I thought the judge said this sends a message because of the circumstances, because of the frequency of use. So I'm kind of hard-pressed to see how that's an abuse of discretion. Because, Your Honor, under California law, the case law has consistently held that the idea that a verdict or a judgment sends a message to officials that might cause them to, in the future, change their behavior, that is not a cognizable benefit under the statute. It's too speculative where the idea that officials might change their behavior in the future, that would effectively make private attorney general's fees available whenever a constitutional or statutory violation has been established. And in cases like the California Supreme Court case of Pacific Legal Foundation, in court of appeals cases like Flannery, Legrone, Roybal, these are cases that we cited in a brief. These cases have held that even though an important right was vindicated, the notion that this sends a message to officials that the conduct was unlawful and should deter them or cause them to change their behavior in the future, that's insufficient under the statute to constitute a substantial public benefit. Thank you, counsel. We'll hear from the plaintiffs. You are muted. Thank you, Your Honors. Good morning, and may it please the court. Kimberly Trimble on behalf of the plaintiffs at police. Your Honors have identified the central issue for the court this morning, which is whether the district court abused its discretion. And that is the appropriate standard of review here when the defendants are only challenging factual findings that were made by the district court. And I think Your Honor actually identified the exact factual findings that show why this particular verdict conveyed a significant benefit on a large class of the public, which is that it affected the nearly 95,000 people who were in CDCR custody, or at least the 1,900 people who were in custody at Pelican Bay. And those factual findings were based on the underlying factual findings that pepper spray or OC chemical agents are frequently used in the prison environment. And what that really shows is that the incidental exposure to pepper spray or OC is something that a large class of the public could be exposed to, and that the defendant's behavior in the face of that accidental exposure to pepper spray and chemical agents that needed to be addressed here, and that was addressed through this lawsuit. I think the district court's finding that this particular verdict would motivate a change in behavior was somewhat tied to the jury's necessary finding that they had violated their policies in this case. But I think what's important to recognize here is it's the policy as construed by defendants. The defendants are correct that plaintiffs never alleged the written policies were inadequate, but clearly the behavior that the defendants did in this case by only opening windows, by not taking individuals out of their cells to let them clean their eyes and get medical attention right away were insufficient. And so the message that was sent to the defendants in this is that in applying the policy, more action is needed. And that's why the negligence finding occurred and actually the deliberate indifference finding. But it's kind of a curious case because I gather you admit that the policies are just fine. It's just the individual implementation of the policy in this case that was at issue, right? Well, no, Your Honor. I think it's that the written policy wasn't challenged, but the policy, the way the defendants construed the jury allowed them to behave the way that they behaved in this case was not fine. And so they do need to adjust their behavior based on the verdict of this case in implementing the written policy. And that doesn't... There's no... You didn't ask for injunctive relief. You didn't ask for a declaratory judgment. There's no change in the actual written policy. How is that different from, say, a government official who gets into an auto accident and you say, well, that should show people they should drive more carefully? I mean, that's... Well, I think this is where it's important that the district court who sat through the trial recognized that the defendants were arguing that they behaved entirely consistently with policy by opening these windows and by cleaning the particular control booth where the chemical agent was deployed. Because what this verdict showed was that those actions do not actually comply with policy, that the policy requires more. And so it's an indication to the defendants that they need to construe their policy in a different way that requires better treatment of the prisoners. Well, Mr. Voss makes a good point that you need to find some dividing line between what I'll call the more run-of-the-mill 1983 or prison abuse case and this case. So if you have, for example, two prisoners who are attacking each other and then it goes to trial because the officers maybe didn't step in quick enough or fast enough or effectively enough, what's the difference in that case, which would suggest you should change how you implement the policy, and this case? And doesn't this kind of judgment risk turning every one of these abuse or infractions of the policy into something that has broader teaching moment for the state? No, Your Honor, because of the how this case frequently reoccurs. The finding that this message was being sent to the defendants wasn't based on the way that the OC agent was deployed, which is maybe admittedly is a very factually specific, very factually specific to this case. The policy changes on the way that the defendants responded to this accidental exposure to pepper spray or to the OC. And that is something the district court specifically found that prisoners are frequently exposed to chemical agents. That's from ER 8 and found that exposure is not uncommon among inmates, also ER 8. And so this isn't a decision that the defendant's behavior in response to the incidental exposure to agents is something that would happen regardless of how the pepper spray was deployed. So even if it was deployed appropriately, for example, to split up a fight like Your Honor suggested may happen, the behavior that the defendants should engage in to clean up after that fight to ensure that people got proper medical care would be widespread as opposed to a particular behavior that could be more specific. So by way of comparison, the state case flannery involved a California Highway Patrol employee who raised a sexual discrimination case. And that's one of the cases that the defendant relies on to say a particular verdict doesn't send a message to just comply with the law. And that is why we shouldn't be allowed attorneys fees in this case. But the difference there is in Flannery, there was no allegation that others were exposed to the California Highway Patrol. The opposite is true here. There are specific factual findings that this factual scenario is affecting large amounts of prisoners. And in fact, this incident affected large amount of prisoners, but also it's a frequently reoccurring incident. And so that's why the message to change behavior when faced with this problem actually does convey a significant benefit to a large class of people. I'm having a little problem defension. How did the actual pepper spray get initially discharged? There's a dispute of fact for that. What the plaintiffs argued was that Mr. Vasquez, Officer Vasquez, later told the inmates that Officer Van Gilder was horse playing, and that it went off when he was horse playing. That's horsing around, yeah. Yes, that they were just irresponsibly playing with the spray. Irresponsibly playing around, and with that playing around, the machine went off. That's far different than opening windows afterwards. It definitely is, yes. And does your case depend upon our decision that the case that you decided really turns on their failure to open windows, rather than their horse playing around? And if so, how does that deal with the ultimate issue? So there's a two-part answer to that question. First, the two different individuals who were found negligent and deliberately indifferent, only Mr. Van Gilder was the one who was horse playing. Mr. Vasquez was found negligent for failing to give appropriate medical attention when the inmates were asking for help. And so that's completely unrelated to the horse playing. I think it's fair to say that perhaps Mr. Van Gilder was also held responsible for not giving medical care, because he knew of the agent being deployed, and he gave himself medical care and didn't leave. But unquestionably, Mr. Vasquez was not found liable for horse playing. He wasn't the one doing the horse playing. He was found liable for his reaction to the OC that was deployed, and his failure to provide the opportunity for the inmates to properly clean off and get the medical care that they needed. Well, if we take your argument to its logical conclusion, doesn't that really mean that every deliberate indifference case is a PAGA case? I don't think that's the case, because the specific findings of the district court as to how many inmates are exposed to this type of agent in the prison environment makes it apply to a larger class of people. I mean, you're talking about the failure to give medical care, and that's certainly an issue in the prisons. Certainly. But the isolated failure to give medical care for a specific medical need, for example, if someone needed surgery and was inmates who are in prison in CDRC, whereas this potentially could based on the district court's findings of how frequently people are exposed to chemical agents in the prison environment. And I see my time is up. Thank you, counsel. We'll give you two minutes for rebuttal. Mr. Vaughn. Thank you, your honors. Just a couple quick points on rebuttal. I think your honors hit on kind of the fundamental problem with plaintiff's theory of attorney general's fees, which are that it's the idea that it would effectively turn every run of the mill prisoner action purely for damages, where an inmate is injured and then receives compensatory damages for their injury into a private attorney general's fees case. And that's simply not what the California legislature intended with section 1021.5. Now, opposing counsel has mentioned this idea that the defendants had argued that they were behaving consistently with policy. But again, this was based on fundamentally a dispute about what occurred during the incident and the degree of exposure, the difference, ultimately a credibility determination about who did the jury believe. The plaintiff's version of calling out man down there at the level of exposure versus the defendant's version that the exposure was very minimal. And I think also, with respect to just to address the actual discharge of the grenade issue, I think it's important to also note that the district court expressly found later on reconsideration in the painting case for Mr. Cisneros, that the accidental discharge of OC that as occurred in this case was not common. There was no record in that, no evidence in the record that that type of accidental discharge of OC was common at Pelican Bay or in CDCR facilities more generally. And so in light of those, that determination and those other considerations, we would ask that the court reverse the district court's award of fees. Thank you, counsel. Thank you both for your arguments this morning. The case just arguably submitted for decision, and we'll proceed to the argument in the companion case, Cisneros versus Van Kilder.
judges: WALLACE, THOMAS, McKEOWN